**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAM WILSON,<br><br>Plaintiff,<br><br>v.<br><br>THE FABRIC CELLAR, INC. dba FABRIC GURU,<br><br>Defendant. | Civil Action No.: 1:20-cv-00244 |

**PLAINTIFF SAM WILSON'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 4

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 5

III. STANDARDS OF REVIEW ..... 8

A. Rule 12(b)(1) ..... 8

IV. ARGUMENT ..... 10

A. Contrary To Defendant's Assertion, The Controversy Is Not Moot ..... 10

B. Plaintiff Has Standing Derived From His Experience On Defendant’s Website ..... 13

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) ........................ 13,14

*Clear Channel Outdoor, Inc. v. City of New York*
*594 F.3d 94 (2d Cir. 2010)* ........................................................................... 12

*Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996)).* .......................................... 10

*City of Mesquite v. Aladdin's Castle, Inc*.
455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 .................................................... 10

*Dow Jones & Co., Inc. v. Harrods, Ltd.*
(S.D.N.Y. 2002) 237 F.Supp.2d 394, 404, aff'd (2d Cir. 2003) ...................................... 9

*Edwin Diaz v. The Kroger Co. No. 1:18 cv 07953 (KPF) (S.D.N.Y. June 4, 2019).* ........ 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167, 169–70, 120 S. Ct. 693, 698, 145 L. Ed. 2d 610 (2000).................... 10,12

*Kamen v. AT & T Co*., 791 F.2d 1006, 1011 (2d Cir.1986) ............................................... 9

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) ......................................................... 8

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)..................................... 13

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137–38 (9th Cir.2002)............ 15

*Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir.1994) .................... 9

*Russo v. City of Hartford* (D. Conn. 2002) 184 F.Supp.2d 169 ......................................... 8

*United Transp. Unions 385 & 77 v. Metro–North Commuter*
862 F.Supp. 55, 57 (S.D.N.Y.1994) .................................................................... 9

## Statutes

42 U.S.C. § 2000a-3(a)............................................................................................. 13
42 U.S.C. §§ 12181 to 12189 .................................................................................. 4, 13

# I. INTRODUCTION

Plaintiff Sam Wilson ("Plaintiff") has brought this action because Defendant The Fabric Cellar Inc. dba Fabric Guru ("Defendant") has denied him, and will continue to deny him, equal access to its Website, a violation of the rights guaranteed him under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 to 12189 ("ADA"). Defendant has now filed a Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(2) in an effort to dismiss Plaintiff's case.

Defendant does not deny the website accessibility issues that necessitated Plaintiff's lawsuit. Instead, Defendant touts its continuing efforts to keep its website accessible long before this lawsuit was filed, but then concedes their insufficiency by acknowledging it has had to remedy the deficiencies identified in Plaintiff's Complaint.

Despite these failures, Defendant argues the Court and Plaintiff should trust that Defendant will make no such mistakes going forward, that the issue is moot, and that the Court has lost subject matter jurisdiction as a result. Such circumstances fail to prove there is no reasonable expectation that the alleged violation will recur, and that remediation efforts have completely and irrevocably eradicated the effects of the violation. The inability to meet this burden defeats Defendant's motion.

Additionally, Defendant's challenges to Plaintiff's legal standing and the sufficiency of his claims directly contradict the rulings of multiple courts in this Circuit and others. There can be no dispute that Article III standing under the ADA is met where Plaintiff encountered accessibility barriers to which he asserts an intent to return. Further, Plaintiff adequately alleges the specific injuries he faced while visiting Defendant's

Website. The issues Plaintiff identified in his Complaint are specific to Defendant's Website. Plaintiff has alleged the Website is constructed in such a way that screen reader users may be unable to make a purchase, that it does not show visible keyboard focus for the focusable elements on the home page, and that the Website's notification for an item successfully added to the cart is not announced to the user. Issues such as these make it nearly impossible for Plaintiff to navigate Defendant's website. Defendant does not dispute the existence of these issues, and instead claims to have remedied them after the lawsuit was filed, while assuring the Court such issues will never arise again.

Accordingly, this Court should deny Defendant's motion in its entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sam Wilson is blind. (Compl., ¶ 2.), and uses screen reading technology to navigate the internet. (*Id.*)

Through its website, Defendant designs, develops, manufactures, and distributes fashion fabrics, home decor, and similar products under its recognized brand Fabric Guru. (Complaint ¶¶ 4-6.) Plaintiff has accessed Defendant's Website but has encountered digital access barriers that prevent him from fully using and enjoying the services available. (Complaint ¶¶ 23, 24, 27.) Plaintiff's Complaint details specific digital access barriers that prevent and deter Plaintiff from enjoying a full and equal experience on Defendant's Website. (Complaint ¶ 23.) For instance, the Website is constructed in such a way that screen reader users may be unable to make a purchase, does not show visible keyboard focus for the focusable elements on the home page, and the Website's notification for an item successfully added to the cart is not announced to

the user. Issues such as these make it nearly impossible for Plaintiff to navigate a website such as Defendant's. Defendant does not dispute the existence of these issues, and instead claims to have remedied them, while assuring the Court such issues will never arise again. (*Id.*)

As a result of these access barriers, Plaintiff filed this action on February 25, 2020, seeking a permanent injunction. Specifically, Plaintiff seeks an injunction requiring that:

a. Defendant retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including all third-party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by individuals with vision related disabilities;

b. Defendant work with the Web Accessibility Consultant to ensure that all employees involved in website and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

c. Defendant work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d. Defendant work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e. Defendant incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f. Defendant work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

g. Defendant directly link from the footer on each page of the Website, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

h. Defendant accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i. Defendant provide a notice, prominently and directly linked from the footer on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j. Defendant provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents (“CSO Personnel”) for the Website;

k. Defendant train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l. Defendant modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology;

m. Plaintiff, his counsel and their experts monitor the Website for up to two (2) years after the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and their experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides Defendant. (Complaint ¶ 11(a) – (m).)

On April 17, 2020, Defendant filed the instant Motion to Dismiss, arguing that Plaintiff's claims are moot, that the Court lacks subject matter jurisdiction, and that Plaintiff lacks standing to challenge Defendant's violations of the ADA. Plaintiff responds herein, demonstrating his standing as to Defendant's Website is subject to the ADA's anti-discrimination laws and that the Court has jurisdiction over the parties as the issue is not moot.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

A Rule 12(b)(1) Motion to Dismiss is based on the argument that there is a lack of subject matter jurisdiction. Plaintiff bears the burden of establishing that the claims are properly before the District Court. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a Rule 12(b)(1) Motion to Dismiss, the Court must distinguish between facial attacks and factual challenges to the Court's jurisdiction. *Russo v. City of Hartford* 184 F.Supp.2d 169, 178 (D. Conn. 2002). A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction can be either a facial attack or a factual attack. A facial

attack merely questions the sufficiency of the pleading. When a defendant raises a facial attack to subject matter jurisdiction, the court takes the allegations in the complaint as true and draws all inferences in favor of the non-movant. *Id*. When a court reviews a complaint under a factual attack for lack of subject matter jurisdiction, it must determine whether the factual predicate for subject matter exists. *Id*.; *United Transp. Unions 385 & 77 v. Metro–North Commuter*, 862 F.Supp. 55, 57 (S.D.N.Y. 1994). Therefore, there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented in an affidavit or otherwise in addition to the complaint. *Kamen v. AT & T Co*., 791 F.2d 1006, 1011 (2d Cir. 1986).

By contrast, in connection with a factual challenge, the court's review is not confined to the pleadings, but may examine extraneous evidence submitted with the motion and make any findings of fact necessary to determine the existence of subject matter jurisdiction. *Dow Jones & Co., Inc. v. Harrods, Ltd.* 237 F.Supp.2d 394, 404 (S.D.N.Y. 2002), aff'd (2d Cir. 2003) 346 F.3d 357. In that event, the court is not obligated to accord presumptive truthfulness to the allegations of the complaint. Rather, it may weigh the evidence on the record accompanying the Rule 12(b)(1) motion, or hold an evidentiary hearing, and decide for itself the merits of the jurisdictional dispute. *Id*. Finally, "[t]he burden of proving jurisdiction is on the party asserting it." *Id*. Quoting *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir.1994).

## IV. ARGUMENT

### A. CONTRARY TO DEFENDANT'S ASSERTION, THE CONTROVERSY IS NOT MOOT

Defendant's main argument in its Motion to Dismiss is that the assertions in Plaintiff's Complaint are moot because Defendant has supposedly remediated the deficiencies alleged in the Complaint.

A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152. "If it did, courts would be compelled to leave the defendant free to return to its old ways. Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 169–70, 120 S. Ct. 693, 698, 145 L. Ed. 2d 610 (2000) (citations omitted). However, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

The Affidavit of Michael McCaffrey establishes the ADA violations asserted in the Complaint. McCaffrey is an ADA compliance expert with ADA Sure. *See* McCaffrey Affidavit at ¶ 2-4, and Exhibit 1. McCaffrey performed ADA compliance testing on the Fabric Guru website, and issued his summary report on November 14, 2019. *See* McCaffrey Affidavit, ¶ 6 and Exhibit 1. He concluded the site is not fully compliant with the ADA. *See* McCaffrey Affidavit, ¶ 6 and Exhibit 1. McCaffrey found significant barriers for the blind population. *See* McCaffrey Affidavit, ¶ 6 and Exhibit 1.

For instance, Defendant's Website is constructed in such a way that screen reader users may be unable to make a purchase due to issues in the quantity field. *See* McCaffrey Affidavit, Exhibit 1 at pg. 2. Defendant's Website also does not show visible keyboard focus for the focusable elements on the home page. *See* McCaffrey Affidavit, Exhibit 1 at pg. 3. Furthermore, the Website's notification for an item successfully added to the cart is not announced to the user. *See* McCaffrey Affidavit, ¶ 6 and Exhibit 1 at pg. 4.

The results of McCaffrey's testing of the www.fabricguru.com Website shows that the Website is not fully accessible to screen readers and thus not accessible to the visually impaired. *See* McCaffrey Affidavit, ¶ 6 and Exhibit 1. Defendant has not met its burden here.

Defendant does not dispute the existence of these issues, and instead claims to have remedied them, while assuring the Court such issues will never arise again. There is nothing to suggest the future changes to Defendant's website will comply with the

accessibility standards. Defendant has retained a consultant since 2011 to insure its website's accessibility. Although the consultant's efforts did not prevent the accessibility issues that necessitated this lawsuit, Defendant asks this Court to assume that the consultant will get right going forward where he failed previously. "[F]actual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). Defendant has not achieved such absolute clarity by retaining the same consultant Defendant employed when Plaintiff experienced the accessibility issues. Defendant also cannot demonstrate there is no reasonable expectation that an alleged violation will recur, nor that Defendant has "completely and irrevocably eradicated the effects of the alleged violation.

Additionally, there is a fact dispute as to whether the remediation efforts are sufficient given that Plaintiff's consultant has not yet evaluated Defendant's remediation efforts, nor the impact of the widget Defendant installed to prevent such deficiencies in the future. Such widgets do not have the capability of making a website fully accessible, and, if installed incorrectly, may result in no changes to accessibility issues. (McCaffrey Affidavit, ¶ 8.) Even where installed correctly, widget results can vary significantly. (*Id.*). Accordingly, the issue is not moot, and subject matter jurisdiction remains intact.

Defendant has found an isolated District Court case to support its mootness argument, *Edwin Diaz* v. *The Kroger Co.* No. 1:18 cv 07953 (KPF) (S.D.N.Y. June 4, 2019). The *Diaz* court acknowledged it found no precedential support for its decision. *Id.* at 7. Additionally, *Diaz* is distinguishable as the plaintiff in *Diaz* did "not dispute the factual assertions Mr. Whiting makes regarding Defendant's efforts at ADA compliance." Plaintiff herein disputes Defendant's assertions regarding ADA compliance.

Moreover, Plaintiff seeks relief beyond simply remediating the issues on the Website, and also seeks training of personnel in ADA compliance for the Website. There is no indication Defendant has completed any training in this regard. The ADA violations alleged in the Complaint are not moot, and Defendant's Motion to Dismiss must be denied.

**B. <u>Plaintiff Has Standing Derived From His Experience On Defendant's Website</u>**

Defendant asserts a standing argument based on lack of injury in fact or future injury. This argument runs contrary to the purpose and implementing case law of the ADA. "Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted); *see* 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

Accordingly, plaintiffs seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement of standing. *Anderson*, 943 F. Supp. 2d at 538 (citations omitted). The Complaint asserts:

> Plaintiff attempted to access the Website from his home in Amherst, New York, located in Erie County. Unfortunately, because of Defendant's failure to build the Website in a matter that is compatible with screen reader programs, Plaintiff is unable to understand, and thus is denied the benefit of, much of the content and services hhe wishes to access on the Website. (Complaint ¶ 23.)

The Complaint further provides examples of the types of issues Plaintiff experienced when attempting to use Defendant's website:

> a. Defendant's Website is so constructed that screen reader users may not be able to make a purchase. When the user navigates to the quantity field, the label and quantity are announced but then the user is taken back to the top of the cart. This process continues to repeat itself so that users become stuck. Screen reader users cannot move past the quantity field once they hear the label.
> (Compl., ¶ 23.; *see also* ¶ 23 b. and c.)

The Complaint also asserts Plaintiff will sustain future injury:

> "These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website. Still, Plaintiff would like to, and intends to, attempt to access the Website in the future to research the products and services the Website offers, or to test the Website for compliance with the ADA." (Complaint ¶ 24.)
>
> If the Website were accessible, i.e. if Defendant removed the access barriers described above, Plaintiff could independently research and purchase Defendant's products and access its other online content and services. (Complaint ¶ 25.)

At the pleading stage, these assertions sufficiently establish Plaintiff has sustained an injury in fact and has standing under 12(b)(1). *See*, *Camarillo v. Carols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (finding plaintiff had standing under the ADA where "(1) she has alleged past injury under the ADA (namely, defendants' discriminatory failure to ensure effective communication of their menu items); (2) it is reasonable to infer from her complaint that this discriminatory treatment will continue; and (3) it is also reasonable to infer, based on the past frequency of her visits and the proximity of defendants' restaurants to her home, that Camarillo intends to return to these restaurants in the future."), citing, *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002) (holding that a plaintiff possesses standing to obtain injunctive relief under Title III of the ADA if she is aware of the defendant's discriminatory conditions; those conditions, and the plaintiff's awareness of them, are continuing; and the plaintiff plausibly intends to return to the place of discrimination). The assertions in this case are specific and sufficient to withstand Defendant's standing argument.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court enter an Order denying Defendant's Motion to Dismiss in its entirety.

Dated: May 4, 2020

NYE STIRLING HALE & MILLER, LLP

By: *___/s/ Benjamin J. Sweet________*
Benjamin J. Sweet, Esquire
1145 Bower Hill Road, Suite 104
Pittsburgh, Pennsylvania 15243
Telephone: 412-857-5350

*Signatures continued below.*

Jonathan D. Miller, Esquire
33 W. Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: 805-963-2345

*Attorneys for Plaintiff, Sam Wilson*

## CERTIFICATE OF SERVICE

I certify that on the 4th day of May, 2020, the foregoing document was electronically filed through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Benjamin J. Sweet*
Benjamin J .Sweet, Esq.