UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAM WILSON,

    Plaintiff,

  v.

THE FABRIC CELLAR, INC. dba FABRIC GURU,

    Defendant.

**DECISION AND ORDER**

20-CV-244S

## I. INTRODUCTION

In this action, Plaintiff Sam Wilson, who is blind, alleges that Defendant The Fabric Cellar, an online fabric retailer, has denied him access to its website, www.fabricguru.com, in violation of the Americans with Disabilities Act. Defendant initially moved to dismiss Wilson's complaint for lack of subject-matter jurisdiction, arguing that it was made moot by subsequent improvements that Defendant made to its website. (Docket No. 10.) Wilson then moved to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Docket No. 15.) His proposed First Amended Complaint alleges that, even after Defendant's claimed improvements, he is still not able to access Defendant's website using assistive technology.[1] (Docket No. 15-1.) For the following reasons, Wilson's motion to amend will be granted and Defendant's motion to dismiss will be denied as moot.

---

[1] "Assistive technology (AT) is any item, piece of equipment, software program, or product system that is used to increase, maintain, or improve the functional capabilities of persons with disabilities." https://www.atia.org/home/at-resources/what-is-at/. Last accessed 6/30/2021 at 8:52 AM.

## II. BACKGROUND

This Court assumes the truth of the following factual allegations contained in Wilson's First Amended Complaint ("FAC"). See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff Sam Wilson is a resident of Amherst, New York. (FAC, Docket No. 15-3, ¶ 17.) He is legally blind. (Id.) Defendant The Fabric Cellar, dba Fabric Guru ("Fabric Cellar"), is a Alabama corporation. (Id., ¶ 2.) Defendant is a "leader in the design, development, manufacture, and distribution of fashion fabrics, home décor, and similar products, under its recognized brand Fabric Guru." (Id., ¶ 4.) Consumers may purchase Defendant's products at its website, https://www.fabricguru.com ("the Website"). (Id., ¶ 5.)

Plaintiff attempted to access Defendant's website from his home but was unable to understand it or derive benefit from it because of its incompatibility with screen reader programs.[2] (Id., ¶ 23). On the Website, the account icon and the hamburger menu (icon of three horizontal bars) are not labeled and are announced as "unpronounceable;" the Cart icon is incorrectly announced only as "zero link;" the search chevron and icon are not labeled, and the chevron is announced as "unpronounceable." (Id., ¶ 23 (a).) A "new product filter" that allows users to search based on price range is not announced correctly, even with the "widget" on.[3] (Id., ¶ 23 (b).) The elements of the widget itself are not

---
[2] Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at *6 (E.D.N.Y. Dec. 21, 2017). "Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." Id.

[3] The "widget" is a program that Defendant alleges it installed after the filing of Plaintiff's complaint.

announced, so that the only way to edit the widget—that is, to adjust accessibility elements such as font size—is to physically change them on screen, which a blind user would be unable to do. (Id., ¶ 23 (d).)

Plaintiff does not specify what kind of screen reader he used in his attempts to access the Website. His FAC contains screenshots of access attempts from what appears to be a mobile telephone (id., ¶¶ 23 (a)-(k)), while the original complaint contains screenshots of access attempts from what appears to be a personal computer screen. (Docket No. 1, ¶¶ 23 (a)-(c).)

Defendant moved to dismiss the complaint on April 17, 2020. (Docket No. 10.) Plaintiff opposed Defendant's motion (Docket No. 13), and shortly thereafter filed a motion to amend his complaint, with a proposed First Amended Complaint attached. (Docket No. 15.)

### III. DISCUSSION

Wilson seeks a declaratory judgment, injunctive relief, and damages from Defendant because its website is inaccessible, in violation of the ADA.

In its motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(1), Defendant argued that this Court lacks subject-matter jurisdiction because Wilson's claims were made moot by improvements Defendant made to the Website. Defendant submitted in support of its motion an affidavit of its web consultant stating that Defendant was committed to maintaining the accessibility of the Website, and that it had made numerous improvements to the Website that brought it into compliance with an internationally-recognized accessibility standard. In opposing Plaintiff's motion to amend, Defendant again argues that this Court lacks subject-matter jurisdiction because all of

Plaintiff's claims, including those in the proposed First Amended Complaint, were made moot by the improvements described in Defendant's motion to dismiss. (See Docket No. 17 at p. 5.) Defendant also argues that leave to amend should be denied because Plaintiff has acted in bad faith and because amendment would be futile.

A.     Interplay of Motions to Dismiss and Motions to Amend

Where a plaintiff seeks to amend its complaint while a motion to dismiss is pending, a court "may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020) (citing Conforti v. Sunbelt Rentals, Inc., 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)).

District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that courts "freely give leave when justice so requires."  Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). "As a general matter, amendments to the pleadings are favored in order to facilitate a resolution on the merits." Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 CIV. 8688 (WHP), 2003 WL 22218643, at *13 (S.D.N.Y. Sept. 25, 2003) (citing Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 573 (S.D.N.Y.1999)).

Where the proposed amendment requires leave of court, "the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." Rheaume v. Pallito, No. 2:15–cv–135–wks–jmc, 2015 WL 7300790, at *2 (D. Vt. Oct. 22, 2015) (emphasis omitted) (quoting Roller Bearing Co. v. American Software, Inc., 570 F. Supp.

4

2d 376, 384 (D. Conn. 2008)); accord Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002) (reversing district court's denial of motion for leave to amend complaint and holding that motion for leave rendered moot pending motion to dismiss rather than vice versa).

This Court will first address Plaintiff's motion to amend. Finding that amendment is proper, it will deny Defendant's motion to dismiss under Rule 12 (b)(1) as moot.

**B.      Motions to Amend**

Defendant argues that this Court should deny Plaintiff leave to amend his complaint because the claims in the FAC, like those in the original complaint, were mooted by the improvements Defendant made, because Plaintiff has shown bad faith in trying to revise his claims, and because amendment would be futile.

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading with the court's leave, and that the court should "freely give leave when justice so requires." FRCP 15 (a)(2). Leave to amend may be denied, however, if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would unduly prejudice the opposing party, or (4) would be futile. Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Parkstone Energy, LLC, No. 06-CV-13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the pleading and draws all reasonable inferences in the pleader's

favor. Wells Fargo Sec., LLC v. LJM Inv. Fund, L.P., No. 18 CV 2020-LTS-SLC, 2021 WL 1198931, at *4 (S.D.N.Y. Mar. 30, 2021) (citing Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007)). To survive a motion to dismiss, a pleading must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, a "pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citations omitted). To state a claim upon which relief can be granted, its factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

**C.     Leave to Amend is Granted**

Defendant opposes Plaintiff's motion to amend for three reasons. First, it argues that the improvements it made after the filing of the complaint remedied all possible ADA accessibility claims, rendering Plaintiff's First Amended Complaint moot and depriving this Court of subject-matter jurisdiction. Second, it argues that Plaintiff's motion to amend should be denied because Plaintiff has demonstrated bad faith. Finally, it argues that amendment should be denied as futile. This Court addresses these arguments along with the other possible reasons for denying leave to amend.

**1. Mootness**

In opposing Plaintiff's motion to amend, Defendant repeats the arguments from its motion to dismiss, arguing that this Court lacks subject-matter jurisdiction because all of Plaintiff's claims have been made moot by the changes Defendant made in response to the original complaint. But the proposed FAC contains new allegations of inaccessibility

not addressed by Defendant in its motion to dismiss. This Court finds this argument—which amounts to a blanket denial of the new facts alleged in the FAC—unconvincing as a reason to deny leave to amend.

**2. Bad Faith.**

Defendant argues that Plaintiff has shown bad faith in alleging new violations in his FAC, in holding Defendant to the WCAG 2.1 standard, and in using a mobile telephone to access the Website for its FAC, where he apparently based his original complaint on the use of a desktop computer.

This Court does not find evidence of bad faith in Plaintiff's attempt to amend its complaint. Plaintiff is reasonably attempting to address the factual assertions Defendant made in support of its motion to dismiss, particularly the claims by Defendant's web consultant Matthew Hellinger. Defendant also argues that Plaintiff's FAC demonstrates bad faith in alleging violations of the WCAG standard instead of the ADA. But it was Defendant who first raised the issue of WCAG compliance. In the affidavit of Matthew Hellinger, Hellinger asserted that all the deficiencies alleged in the original complaint had been remedied, and the website is "currently compliant with WCAG 2.1 standards." (Hellinger Affidavit, Docket No. 10-1 at p. 2.) It is disingenuous for Defendant to submit a statement that it has complied with WCAG 2.1 standards, and then complain when Plaintiff presents allegations to the contrary in its proposed FAC. At most, the contrast between these two versions of "WCAG compliance" demonstrates an ongoing dispute of fact between the parties, which is not a reason to deny leave to amend.

Defendant also argues that Plaintiff demonstrates bad faith in switching the modality of accessing the Website from a computer to a mobile phone, but Defendant

provides no legal support for this proposition. The changes in the accessibility issues Plaintiff names in its FAC do not suggest bad faith, but rather a response to Defendant's claim that its website is now fully accessible. As Plaintiff argues, the question under the ADA is whether the website is accessible, not on what platform a disabled person is trying to access it.

### 3. Prejudice

Defendants argue that allowing Plaintiff to proceed in what Defendant considers bad faith would "prejudice" Defendant. But this Court does not find that permitting amendment at this early stage would prejudice Defendant. Prejudice has been found when a party is permitted to amend on the eve of trial or after the establishment of a pretrial order. New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC, No. 1:20-CV-2327-MKV, 2021 WL 930616, at *2–3 (S.D.N.Y. Mar. 11, 2021) (citing Joint Stock Co., No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017)); see also In re Madison Asset LLC, No. 1:20-CV-10299-MKV, 2021 WL 1894032, at *1–2 (S.D.N.Y. May 11, 2021) (also citing Joint Stock, 2017 WL 2988249, at *1). These circumstances are not present here.

### 4. Undue delay

Defendants do not argue that Plaintiff has delayed unduly in moving to amend, and this Court finds no undue delay. Plaintiff moved to amend on May 13, 2020, only 26 days after Defendant filed its motion to dismiss. (See Docket Nos. 10, 15.) See Joint Stock, 2017 WL 2988249, at *1 (finding no undue delay where plaintiffs moved for leave to amend twenty-four days after defendant moved to dismiss and before any defendant answered complaint); see also Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647,

8

653 n.6 (2d Cir. 1987) (noting that mere delay, absent bad faith or undue prejudice, is not alone grounds to deny leave to amend) (collecting cases)).

### 5. Futility

Defendant's principal argument is that amendment would be futile because the amended complaint could not withstand a motion to dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

The "ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." Del-Orden v. Bonobos, Inc., No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *4 (S.D.N.Y. Dec. 20, 2017) (citing PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001)). To state a claim under Title III of the ADA, a plaintiff must allege that (1) he or she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against him or her by denying him or her a full and equal opportunity to enjoy the services defendants provide. Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); see 42 U.S.C. § 12182(a).

Here, the parties agree that Wilson is blind and therefore disabled under the ADA.

Defendants do not argue that the Website is not a place of public accommodation.[4]

---

[4] Defendant hints at this argument in its memorandum supporting its motion to dismiss, when it attempts to distinguish the instant matter from a case in the Southern District of New York, Del-Orden v. Bonobos, No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *4 (S.D.N.Y. Dec. 20, 2017) (Docket No. 10-2 at pp. 12-13.) In Del-Orden, the Court held that commercial websites in general qualify as places of public accommodation and denied the defendant's motion to dismiss on mootness grounds. In Del-Orden, the defendant sold clothing both in a brick-and-mortar store and on its website. The Court held, in the alternative, that the website qualified as a place of public accommodation due to its connection to a physical store. Defendant here, in arguing to dismiss, argued simply that Del-Orden was factually distinguishable from the instant matter because Defendant does not maintain a physical store.
 In arguing against amendment, Defendant does not argue that the Website is not a place of public accommodation. Its briefing focuses instead on the appropriate standard that should be applied, whether

Therefore, this Court will assume without deciding that the website is a place of public accommodation, although the law in this circuit is not entirely settled on this question and courts have used different rationales in reaching this conclusion. See, e.g., Del-Orden, 2017 WL 6547902, at *4 (holding broadly that "the term 'public accommodation' in Title III extends to private commercial websites that affect interstate commerce," but holding, in the alternative and on narrower grounds, that a commercial website was a place of public accommodation because it offered goods and services "in tandem with" a brick-and-mortar store); Markett v. Five Guys Enterprises LLC, No. 17-CV-788 (KBF), 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017) (finding a plausible claim for a Title III violation where a blind woman was unable to use the Five Guy's website to order online and finding that the website fell within the ADA regulation "either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants."); see also Pallozzi v. Allstate Life Ins. Co., 198 F.3d 28, 31 (2d Cir. 1999), opinion amended on denial of reh'g, 204 F.3d 392 (2d Cir. 2000) (holding that, because Title III of the ADA specifically lists an "insurance office" as a place of public accommodation, insurance policies—the goods and services provided by such companies—are also covered by the Act); Nat'l Fed'n of the Blind v. Scribd Inc., 97 F. Supp. 3d 565, 575–76 (D. Vt. 2015) (internal citations omitted) (holding that although the ADA was ambiguous on the issue of whether a website qualified as a public accommodation, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's

---

Plaintiff showed bad faith in switching modalities of access, and, ultimately, whether or not the website is accessible under the ADA. Consequently, this Court considers this argument waived for purposes of Defendant's motion to dismiss.

intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public" and further holding that a digital program with reading subscription services on its website and on apps for mobile phones and tablets was a place of public accommodation because it provided services listed in the ADA).

Defendant argues that the proposed FAC could not survive a motion to dismiss pursuant to Rule 12 (b)(6) because Defendant's website is compliant with "both Title III and with WCAG guidelines." (Docket No. 17 at p. 14). But this argument amounts to a denial of Plaintiff's allegations, not a reason Plaintiff does not state a claim. In assessing whether amendment would be futile, this Court must take the facts alleged in the proposed amended complaint as true. Assessing Plaintiff's claims, this Court finds that Plaintiff has sufficiently alleged that Defendant's website denies him "a full and equal opportunity to enjoy the services defendants provide." Camarillo, 518 F.3d at 156.

Plaintiff alleges that he attempted to access the Website from his home in Amherst, New York, but was unable to do so. (FAC, Docket No. 15-3, ¶ 23.) He alleges that a blind user using the Website with a screen reader hears the word "unpronounceable" when the cursor is over the "hamburger icon" (three horizontal bars) or the "search" button. (Id., ¶ 23 (a).) He further alleges that: the "Cart" icon is incorrectly labeled (id.); the upper and lower fields of a price filter are announced incorrectly, so that a blind user cannot use the price- filter function (id., ¶ 23 (b)); the different elements of the widget are not announced by a screen reader, so that the only way to edit the widget is by physically changing its elements on the screen, something a blind user cannot do. (Id., ¶ 23 (d).) Plaintiff further alleges that a blind person using a screen reader is unable to connect with Defendant's

11

social media pages because the icons for those pages are announced incorrectly. (Id., ¶ 23 (e).) He alleges that screen reader users do not receive an announcement when items are placed in their shopping cart ad that this information is only accessible visually. (Id., ¶ 23 (k).) Plaintiff alleges that these barriers deny him access to all of the services the Website offers. He alleges that he would like to access the Website in the future. (Id., ¶ 24.)

Taking these allegations as true, as it must, this Court finds that Plaintiff has sufficiently alleged that Defendant discriminated against him by denying him a full and equal opportunity to use its website. Because Plaintiff's FAC plausibly states a claim for relief, amendment would not be futile. For all the foregoing reasons, this Court will grant Plaintiff's motion to amend his complaint.

## D. Defendant's Motion to Dismiss

Because this Court is allowing Plaintiff to amend his complaint, it denies as moot Defendant's motion to dismiss the original Complaint.

## IV. CONCLUSION

For the reasons stated above, Wilson's motion to amend is granted, and Defendant's motion to dismiss is denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to Amend (Docket No. 15) is GRANTED.

FURTHER, that Plaintiff must file his first amended complaint (Docket No. 15-3 at pp. 1-27) within 14 days of the entry date of this decision.

FURTHER, that Defendant's Motion to Dismiss (Docket No. 10) is DENIED as moot.

FURTHER, that Defendant must answer or otherwise respond to the first amended complaint within 21 days of its filing.

SO ORDERED.

Dated: July 13, 2021
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge